IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NATURAL RESOURCES DEFENSE )
COUNCIL, INC., et al., )
)
v. ) No. 3:08-0229
)
COUNTY OF DICKSON, TENNESSEE, )
et al., )

MEMORANDUM

I. Introduction

Pending before the Court are the Defendants ALP Lighting And Ceiling Products, Inc., Nemak USA, Inc., And Interstate Packaging Company ("Non-Governmental Defendants) Joint Motion To Dismiss (Docket No. 232) and Plaintiffs' Motion For Oral Argument On Defendants' Motion (Docket No. 245).

For the reasons set forth herein, the Motion To Dismiss is DENIED. As the Court finds oral argument unnecessary, the Plaintiffs' Motion For Oral Argument is DENIED.

II. Factual and Procedural Background

Plaintiffs Natural Resources Defense Council, Inc. ("NRDC"), Beatrice Holt, and Sheila Holt-Orsted brought this action against Defendants County of Dickson, Tennessee, City of Dickson, Tennessee, ALP Lighting and Ceiling Products, Inc., Nemak USA, Inc., and Interstate Packaging Co., pursuant to the citizens suit provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA") to abate an alleged "imminent and substantial endangerment to human health and the environment posed by trichloroethylene ('TCE') and perchloroethylene ('PCE') disposed at the Dickson Landfill, in Dickson, Tennessee." (Amended Complaint, at ¶ 1 (Docket No. 198)). The Amended Complaint

specifically alleges:

1. . . . TCE and PCE were once commonly used as industrial solvents and degreasers. For decades, industrial and other hazardous and solid wastes including TCE and PCE were dumped at the Landfill. Those wastes did not stay put.

2. The Landfill site is now extensively contaminated with TCE, PCE and these chemicals' degradation products. TCE and PCE pollution have seeped deep beneath the Landfill to underlying groundwater. TCE contamination has rendered water from wells and springs two to three miles from the Landfill unfit for human consumption. Polluted spring water is flowing directly into the West Piney River, a fishing stream and a major source of drinking water for the Water Authority of Dickson County. Several square miles of Dickson County have been recognized as an "imminent threat" area by the County. TCE contamination above drinking water limits, and orders of magnitude above United States Environmental Protection Agency ('EPA') drinking water screening levels, has been found in at least two wells even outside that threat area. In some areas, this contamination appears to be worsening.

3. Although sweet to the smell and colorless to sight, TCE and PCE are toxic. Exposure to TCE has been linked to nervous system impairment; liver and lung damage; abnormal heartbeat; low birth weight, congenital heart defects, orofacial defects, and other developmental harms; and comas. Exposure to PCE can cause nervous system impairment, liver damage, kidney damage, comas, and reproductive system harm. TCE and PCE are also likely human carcinogens. At sufficient exposure levels, TCE and PCE cause death.

4. Defendants in this case, the Landfill's owners and operators and the owners of local industrial facilities that disposed of TCE and/or PCE at the Landfill, have not taken steps necessary to protect health and the environment from the contamination emanating from the site. More than two decades after TCE was first detected in nearby drinking water sources, Defendants have not fully characterized the present and likely future extent of the TCE and PCE contamination. Defendants have not contained the contamination's continued migration. Defendants have, instead, effectively surrendered the soil and ground and surface water of Dickson County to the slow spread of these invisible and toxic chemicals.

5. Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ('RCRA'), 42 U.S.C. § 6972(a)(1)(B), authorizes private persons to sue those responsible for such contamination to compel a comprehensive investigation and cleanup. Defendants City of Dickson, Tennessee and County of Dickson, Tennessee own and operate the Landfill, and are responsible for its management. Defendants ALP Lighting and Ceiling Products, Inc. ('A.L.P.'), Nemak USA, Inc. ('Nemak') and Interstate Packaging Company ('Interstate') own industrial

facilities in the Dickson area that generated TCE and/or PCE wastes, some of which were disposed at the Landfill. Each Defendant has contributed to the disposal and management of TCE- and/or PCE- contaminated waste that may present an imminent and substantial endangerment to human health and the environment of Dickson County.

6. Plaintiff Beatrice Holt owns and resides on a property adjacent to the Landfill (the 'Holt property') that is contaminated with TCE and a chemical degradate of TCE and PCE. Plaintiff Sheila Holt-Orsted, Beatrice Holt's daughter, resided at the Holt property for many years and continues to spend substantial time there. Plaintiff Natural Resources Defense Council, Inc. is a non-profit environmental organization with members throughout the United States, including in Dickson County. Through this suit, Plaintiffs seeks to compel Defendants to investigate and characterize fully the spread of TCE and PCE contamination from the Landfill, to restore the waters and lands of Dickson County that have been polluted by this contamination, and to protect the health of Dickson County's residents and environment.

(Docket No. 198, at ¶¶ 1-6).

### III. Analysis

A. The Standards for Considering a Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009)). "'A legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Defendants seek dismissal of Plaintiffs' claims based on the following grounds: a RCRA

3

provisions bars this action; Plaintiff NRDC lacks standing to bring this case; Plaintiffs' claims are moot; and the doctrines of abstention and primary jurisdiction warrant dismissal of this case.

B. RCRA Citizens Suit Bar

In their Amended Complaint, Plaintiffs cite Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), as a basis for jurisdiction for this "citizens suit." (Amended Complaint, at ¶¶ 5, 125 (Docket No. 198)). That section provides that a citizen may bring a civil action regarding any solid or hazardous waste "which may present an imminent and substantial endangerment to health or the environment." The Defendants argue that this type of citizens suit is barred by another section of RCRA, 42 U.S.C. § 6972(b)(2)(B)(iv), because the Commissioner of the State of Tennessee Department of Environment and Conservation ("TDEC") issued an order regarding the Landfill in 2001.

The Order, issued on October 15, 2001, requires Dickson County to undertake certain actions with regard to the Landfill. (TDEC Commissioner's Order, dated October 15, 2001 (Docket No. 235-4)). The Commissioner states that his jurisdiction to issue the Order is based on the Tennessee Solid Waste Disposal Act, Tenn. Code Ann. §§ 68-211-101, et seq., and the Tennessee Hazardous Waste Management Act of 1983, Tenn. Code Ann. §§ 68-212-201, et seq.. (Id., at 2-3).

The RCRA section Defendants cite as a bar to this suit, 42 U.S.C. § 6972(b)(2)(B)(iv), provides that:

> (B) No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment –
>
> * * *
>
> (iv) has obtained a court order (including a consent decree) or

> *issued an administrative order* under section 106 of the
> Comprehensive Environmental Response, Compensation and
> Liability Act of 1980 [42 U.S.C.A. § 9606] or *section 6973 of this
> title* pursuant to which a responsible party is diligently conducting
> a removal action, Remedial Investigation and Feasibility Study
> (RIFS), or proceeding with a remedial action.

(Emphasis added). RCRA defines Administrator to mean "the Administrator of the Environmental Protection Agency." 42 U.S.C. § 6903(a).

Even though the TDEC Commissioner's Order was not issued by the Administrator of the Environmental Protection Agency ("EPA"), Defendants argue that the Order falls within this subsection. The Defendants contend that based on a Memorandum of Understanding ("MOA") between the State of Tennessee and the EPA, which became effective on January 21, 2005, the TDEC Commissioner "steps into the shoes of the EPA Administrator for purposes of enforcing the federally-mandated hazardous waste program." (Defendant's Memorandum, at 7 (Docket No. 233); Memorandum of Agreement (Docket No. 236-1)). Thus, according to the Defendants, the Commissioner's 2001 Order "constitutes an Administrator's Order pursuant to 42 U.S.C. § 6973"[1] for purposes of the RCRA statutory bar. (Id.)

The Court is not persuaded, however, that the MOA purports to confer such authorization on the State. The first paragraph of the MOA states that it is authorized by Section 3006 of RCRA, codified at 42 U.S.C. § 6926. (Docket No. 236-1, at 1). Subsection (d) of that statute provides: "Any action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the Administrator *under this subchapter*." 42 U.S.C. § 6926(d) (emphasis added). "This subchapter" is Subchapter III, which

---

[1] Section 6973 vests the EPA Administrator with the authority to bring suit or issue orders regarding solid or hazardous waste that may present "an imminent and substantial endangerment to health or the environment."

5

includes 42 U.S.C. §§ 6921 through 6939f and is entitled "Hazardous Waste Management."  By contrast, 42 U.S.C. § 6973, governing "imminent hazards," is contained in Subchapter VII, which includes 42 U.S.C. §§ 6971 through 6979b and is entitled "Miscellaneous Provisions." Therefore, the statute cited by the MOA does not authorize the State to step into the shoes of the EPA administrator for purposes of bringing an action or issuing an order regarding an "imminent hazard" under 42 U.S.C. § 6973.  That authority is retained by the EPA Administrator, who is required to simply provide notice to the affected State. 42 U.S.C. 6972(a).  This conclusion is supported by the reasoning of the New Jersey District Court in Interfaith Community Organization v. AlliedSignal, Inc., 928 F.Supp. 1339, 1346-48 (D.N.J. 1996)("The 'same force and effect' provision in section 3006 of RCRA [42 U.S.C. § 6926] does not apply to section 7003 [42 U.S.C. § 6973] of RCRA because sections 3006 and 7003 are not in the same subchapter.")[2]  Therefore, the TDEC Commissioner's Order is not an administrative order issued by the EPA Administrator regarding an imminent hazard for purposes of 42 U.S.C. § 6972(b)(2)(B)(iv) which would have the effect of precluding this citizens suit.

C.  Standing and Mootness

Next, Defendants argue that Plaintiff NRDC does not have standing to bring this action. The plaintiff bears the burden of establishing standing requirements. Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1990).  In evaluating a motion to

---

[2]  The Court notes that Judge Haynes has already rejected an argument by the County of Dickson and the City of Dickson, in a related case, that the TDEC Commissioner's Order precludes a RCRA citizens suit by virtue of Section 7002(b)(2)(C) of RCRA, 42 U.S.C. § 6972(b)(2)(C).  In reaching his decision, the Court specifically explained that "[a]lthough Congress has delegated certain RCRA hazardous and solid waste authority to the States, Congress did not delegate RCRA's endangerment provisions to the States." (Sheila Holt-Orsted, et al. v. City Of Dickson, et al., Nos. 3:07-0727, 3:07-0732, 3:08-0321 (Memorandum, at 59)(Docket No. 314)).

6

dismiss on standing grounds, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 112 S.Ct. at 2137.

For a plaintiff organization to establish Article III standing, it must show the following: (1) its members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). For an individual plaintiff to establish Article III standing, the plaintiff must show: (1) he or she "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id.

Defendants argue that Plaintiff NRDC has not shown that one or more of its members has standing because they have not established they are suffering "injury in fact" nor have they shown that the injury will be redressed by a favorable decision. Defendants argue that the Amended Complaint contains only vague allegations regarding the proximity of NRDC members to the Landfill and does not allege that they are currently using contaminated drinking water.

Despite Defendants' protestations, the Plaintiffs need not show that they are currently using contaminated water in order to establish standing. The Supreme Court has warned against raising "the standing hurdle higher than the necessary showing for success on the merits." Laidlaw, 120 S.Ct. at 704. As discussed above, a RCRA citizens suit may be brought where the contamination "*may* present an imminent and substantial endangerment to the health or the

7

environment." 42 U.S.C. § 6972(a)(1)(B). See Interfaith Community Organization v. Honeywell International, Inc., 399 F.3d 248, 257 (3rd Cir. 2005).

In Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., the Supreme Court held that plaintiffs in an environmental lawsuit had established injury in fact because their fear of using a nearby polluted waterway was reasonable and subjected them to economic and aesthetic harms. 120 S.Ct. at 184-85. According to the Court, "environmental plaintiffs adequately allege injury in fact when they allege that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." 120 S.Ct. at 705. The Court cited the plaintiffs' statements that they would use the North Tyger River for recreation if the defendant were not discharging pollutants into it as sufficient to show injury in fact. Id., at 704-05. One of those plaintiffs who was found to have standing alleged that "he would like to fish, camp, swim, and picnic in and near the river between 3 and 15 miles downstream from the facility, as he did when he was a teenager, but would not do so because he was concerned that the water was polluted by Laidlaw's discharges." Id., at 704. See also Interfaith, 399 F.3d at 254-58 (Court finds plaintiffs who lived near former site of chromium manufacturing plant and were concerned about health risks caused by exposure to pollutants from site adequately alleged standing in RCRA citizens suit). The Amended Complaint in this case contains allegations that are as compelling, if not more so, in alleging injury than those described by the Court in Laidlaw.

In this case, the 55-page Amended Complaint alleges that the Landfill site is extensively contaminated with TCE and PCE, and that the pollution has seeped deep beneath the Landfill to the underlying groundwater. (Docket No. 198, at ¶ 2). The Amended Complaint further alleges that TCE contamination has rendered water from wells and springs two to three miles from the

8

Landfill unfit for human consumption. (Id.) Polluted spring water, according to the Amended Complaint, is flowing directly into the West Piney River, a fishing stream and a major source of drinking water for the Water Authority of Dickson County. (Id.) It is further alleged that several square miles of Dickson County have been recognized as an "imminent threat" area by the County, and that TCE contamination has been found in at least two wells even outside that threat area. (Id.) According to the Plaintiffs, the contamination continues to migrate beyond this recognized threat area, and the threat posed by the Landfill contamination has not been eliminated by the actions of the Defendants. (Id., at ¶¶ 2, 4, 80, 85-123).

The Amended Complaint specifically alleges that twenty NRDC members live in Dickson County, Tennessee, and that some of its members live in proximity to the Landfill. (Docket No. 198, at ¶ 24). The Amended Complaint further alleges that those members who live in Dickson County "drink, cook, bathe, wash dishes and garden with water from sources, including private wells, threatened by contamination from the Landfill." (Id.) Plaintiffs allege that these members "reasonably believe that contamination from the Landfill may endanger their health, the health of their families and communities, and the environment." (Id.)

The Court concludes that the Amended Complaint adequately alleges injury in fact as to individual members of the NRDC. The Plaintiffs allege that the Landfill contamination continues to migrate and threaten sources of both private and public drinking water as well as the use of a recreational water resource for residents of Dickson County, and specifically, NRDC members who live in proximity to the Landfill.[3]

---

[3] Although these allegations are sufficient to establish standing for purposes of a motion to dismiss, the Court notes that NRDC member Joyce Tucker has filed an affidavit discussing her concern about the effect of the contamination on her well water and the public water supply, and on her ability to fish and swim in the West Piney River. (Docket No. 69). Ms. Tucker states that she lives approximately five miles from the Landfill and one mile from the West Piney

9

Case 3:08-cv-00229   Document 253   Filed 04/01/10   Page 9 of 14 PageID #: 6617

As to the redressability requirement for standing, Defendants argue that the speculative allegations of future harm in the Amended Complaint are insufficient to justify injunctive relief. The Defendants also argue that the actions taken by the County of Dickson and the City of Dickson already provide the remedy for the injury alleged. As stated above, the Amended Complaint contains specific and detailed allegations that the Landfill contamination is migrating and threatening both the private water supply of residents who live beyond the recognized threat area, as well as the public water supply. The Amended Complaint also repeatedly alleges that the actions of the Government Defendants have failed to eliminate the threat from the Landfill contamination. In the Prayer For Relief, the Amended Complaint seeks injunctive relief requiring the Defendants to take steps to remedy the endangerment posed by the Landfill contamination. (Docket No. 198, at 49-50). Such injunctive relief is authorized by the citizens suit provisions of RCRA. 42 U.S.C. § 6972(a). See, e.g., Interfaith, 399 F.3d at 257. Plaintiffs have adequately alleged that a favorable decision will redress their injury for purposes of standing.

In a similar vein, Defendants argue that Plaintiffs' request for injunctive relief is moot because the TDEC Commissioners' 2001 Order has provided them with the relief they request. A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Ford v. Wilder, 469 F.3d 500, 504 (6th Cir. 2006)(quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

The allegations of the Amended Complaint are directly contrary to Defendants' premise. The Plaintiffs allege that the Order issued by the TDEC Commissioner in 2001 was not based on the provisions of RCRA or CERCLA, and that the Government Defendants have not even

---

River. (Id.)

complied with the actions required by the Order, nor have they been made to comply with the Order. (Docket No. 198, at ¶¶ 136-48). Plaintiffs specifically allege that the actions of the Defendants have not eliminated the contamination threat, and that the contamination continues to migrate. In light of these allegations, the Defendants' mootness argument is meritless.

D. Burford Absention and Primary Jurisdiction

Defendants next argue that the Court should abstain from exercising jurisdiction over this action based on Burford v. Sun Oil, Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.3d. 1424 (1943) and/or the doctrine of primary jurisdiction. Defendants point to the efforts by the State and the Government Defendants to address the Landfill contamination at issue here as supporting abstention.

In Burford, the plaintiffs sought an injunction in federal court to bar enforcement of a Texas Railroad Commission order that granted an oil drilling permit. 319 U.S. at 317. Even though the federal court had both diversity and federal question jurisdiction, the Supreme Court held that the district court should abstain from hearing the case because the state had established an extensive regulatory process for the regulation of oil and gas matters that provided adequate review in the state courts. 319 U.S. at 325.

In a more recent case, the Supreme Court explained the Burford abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361, 109

11

S.Ct. 2506, 105 L.Ed.2d 298 (1989)(quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). The Supreme Court does not apply Burford to require abstention "whenever there exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." New Orleans Public Service, 491 U.S. at 362. Furthermore, Burford does not require abstention when resolution of a federal question may result in the overturning of a state policy. Id., at 363. Indeed, "the power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

In a related case, Judge Haynes considered and rejected the Defendants' abstention argument based on the same facts as alleged here. (Sheila Holt-Orsted, et al. v. City of Dickson, et al., Nos. 3:07-0727, 3:07-0732, 3:08-0321 (Memorandum, at 51-56)(Docket No. 314)). Judge Haynes considered the cases cited by Defendants – Burford, Coalition for Health Concern v. LWD, Inc., 60 F.3d 1188, 1193 (6th Cir. 1995), Ellis v. Gallatin Steel Co., 390 F.3d 461, 481 (6th Cir. 2004), and Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc., 720 F.2d 897, 931 (6th Cir. 1982) – also cited by the Defendants here, and determined that they did not warrant abstention under the facts alleged by Plaintiffs in this case:

> In the Court's view, [these cases] involved State permit decisions under state law. Plaintiffs' actions do not challenge the States' permit process. Plaintiffs' claims relate directly to contamination of their water sources in violation of federal law and remedying current contamination as required by federal law. Other key Burford factors, such as 'available', 'timely and adequate state court review ' are not present here because Plaintiffs could not have pursued any state court review of the Commissioner's 2001 Order or other TDEC directives. Tenn Code Ann. § 68-212-215 § (f)(3)(B) allows citizens to intervene, but within forty-five days of the administrative Order filed as 'judgment' with the clerk of court. Under Tennessee law, such orders become 'final and not subject to review' if not appealed to the Solid Waste Disposal Board within 30 days of service. Tenn. Code Ann. §§ 68-211-113(a) and 68-212-215(d)). The County did not appeal

12

> this Order. Plaintiffs are not shown to have been served with notice of that Order to appeal in the state agencies and courts. In addition, unlike Burford, there are not any 'difficult questions of state law' here. The Sullivan Plaintiffs' claims arise only under RCRA. Defendants do not describe any coherent state policy challenged by this action. The state records reflect an ad hoc series of orders and directives that ultimately left Dickson County to select its own option to remedy the contaminated water sources. Plaintiffs note that the State Defendants' option that Dickson elected, in essence, abrogates the TDEC Commissioner's 2001 order in that under the selected option, Dickson County is not required to engage in further testing to identify the extent and spread of the contamination that purportedly is ongoing.

(Id., at 55-56).

The Court agrees with the reasoning of Judge Haynes, and holds that the circumstances here "do not fit the 'extraordinary and narrow' class of actions for Burford abstention." (Id., at 64 (citing New Orleans Public Service, 491 U.S. at 391)).

Although the Defendants do not argue the doctrine of primary jurisdiction apart from Burford abstention, the Court notes that Judge Haynes also considered that argument. Similar to Burford, the doctrine of primary jurisdiction requires that a federal court stay proceedings where a claim involves issues within the "special competence of an administrative body." United States v. Western Pacific R.R. Co., 352 U.S. 59, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Citing cases in which courts have declined to apply the doctrine of primary jurisdiction to a RCRA citizens suit, Judge Haynes rejected the Defendants' primary jurisdiction defense. (Docket No. 314, at 66, in Case No. 3:07-00727). See College Park Holdings, LLC v. Racetrac Petroleum, Inc., 239 F.Supp.2d 1322, 1328-29 (N.D. Ga. 2002)(Holding that the RCRA citizens suit provision contemplates federal court actions by individuals as a supplement to state government action); Williams v. Ala. Dept. of Transp., 119 F.Supp.2d 1249, 1257 (M.D. Alab. 2000); Stewart-Sterling One, LLC v. Tricon Global Rest., 2002 WL 1837844, at *5 (E.D. La. Aug. 9, 2002). In rejecting the defense, Judge Haynes also pointed out the Plaintiffs' allegation that the States'

13

regulatory actions have not adequately remedied the contamination: "Here, the TDEC ultimately allowed Dickson County to select an option that does not require testing and removal of the TCE contamination that has spread." (Docket No. 314, at 66, in Case No. 3:07-00727). This Court agrees with Judge Haynes' reasoning and declines to apply the doctrine of primary jurisdiction to this case.

IV. Conclusion

For the reasons set forth herein, the Defendants' Motion To Dismiss (Docket No. 232) is denied.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE